[661 NYS2d 6]

In the Matter of MARVIN GOODSON et al., as Executors of MARK GOODSON, Deceased, Respondents. HARRIS L. KATLEMAN, Appellant.

First Department, July 31, 1997

APPEARANCES OF COUNSEL

*Kenneth L. Steinthal* of counsel, New York City *(Nadja Webb* on the brief; *Weil, Cotshal & Manges,* attorneys), for appellant.

*Robert M. Abrahams* of counsel, New York City *(Linda J. Cahn* and *Jennifer Schantz* on the brief; *Schulte Roth & Zabel, L. L. P.,* attorneys), for respondents.

## OPINION OF THE COURT

MILONAS, J.

Decedent Mark Goodson, a television producer, died in December 1992, and his will was thereafter admitted to probate in both New York and California. The executors of the will are respondents Marvin Goodson, Jeremy Shamos and Richard Schneidman. In June 1993, the executors hired claimant Harris L. Katleman as the Chief Executive Officer of Mark Goodson Productions, L.P. The company had offices in New York and California, and Katleman worked primarily out of the California offices. As is relevant to this appeal, Katleman contends that when the executors decided to sell the company less than a year later, they agreed to pay him a bonus upon its sale, and that this purported agreement is evidenced by a handwritten note signed by Jeremy Shamos. Respondents maintain that there is no agreement, and that the note offered by Katleman is no more than an "outline" of ongoing, unconcluded negotiations between Shamos and Katleman.

After the company was sold, bringing over $55 million to the estate, claimant wrote a letter to Shamos claiming that, under the above-noted agreement, he was owed approximately $3 million. When negotiations between the parties to settle this claim were unsuccessful, Katleman brought an action in California to enforce it, alleging misrepresentation and breach of contract; seeking compensation for services allegedly rendered pursuant to the agreement; and citing as defendants the executors (as individuals and in their fiduciary capacity), the company, and numerous unnamed individuals (Does 1 through 20). On the very same day, respondents brought the instant action under SCPA 1809 in New York County Surrogate's Court to determine the validity of Katleman's claim.

Katleman moved to dismiss the petition on the grounds that an action for similar relief was pending in California, that the

New York court lacked personal jurisdiction over him and that the New York forum was inconvenient to him. Surrogate's Court denied the motion, finding that its authority was not "preempted" by claimant's recourse to another court, and that it was generally the better course to "consolidate in the Surrogate's Court all matters related to the affairs of the decedent." It also rejected Katleman's remaining grounds for dismissal. Under the circumstances presented, we find that Surrogate's Court should have declined jurisdiction in favor of the California action and therefore reverse.

SCPA 1809, entitled "Proceeding to determine validity and enforceability of claims," provides that where a fiduciary has knowledge or notice that a claim may be asserted and no written notice of claim has been presented, or where the fiduciary has reason to question the validity of a claim, with or without such notice, and no action or proceeding to enforce the claim has been instituted, the fiduciary may bring a petition in Surrogate's Court to determine the validity of such claim. The procedure was intended to avoid unnecessary accountings, and, indeed, subdivision (3) provides that the court "may determine the claim and all issues relating thereto as a preliminary step in the accounting proceeding" (Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 1809, at 206).

SCPA 1810 provides, in relevant part, that "[n]othing in this article shall prevent a claimant from commencing an action on his claim at law or in equity, provided that where a claim has been presented and rejected or deemed rejected pursuant to 1806 in whole or in part the action must be commenced within 60 days after such rejection."

Respondents' position is that unless an action or proceeding to enforce a claim has already been commenced, an executor may move under section 1809 and effectively foreclose a claimant's option under section 1810. Surrogate's Court seems to agree with this reading of the two sections, citing *Estate of Balfe* (161 AD2d 1132, *lv denied* 76 NY2d 707) in support of this principle. We do not read *Balfe* to compel or suggest such result. In that case, claimant presented a claim to the estate pursuant to SCPA 1803. Without accepting or rejecting it, the executrix brought a section 1809 petition that claimant failed to answer for two months, at which point he asserted that Surrogate's Court no longer had jurisdiction because he had commenced an action in Supreme Court the previous day. When Surrogate's Court retained jurisdiction, claimant defaulted and

the claim was dismissed. The Fourth Department concluded that if claimant had not presented his claim in the first instance pursuant to SCPA 1803, he would have had the option of pursuing an action. "Having presented his claim under SCPA 1803, however, he was required to wait for the determination contemplated in SCPA 1809 and should not be permitted to abort that procedure by bringing an action at law" (*supra*, at 1133).

While we agree with this conclusion on the stated facts, we do not agree with that court's subsequent suggestion that if a section 1809 proceeding is barred by its terms from being brought if an action to enforce the claim has been instituted, then "the converse should also be true," i.e., an action under section 1810 should be barred by the same consideration *(Estate of Balfe, supra,* at 1133). Had the Legislature intended such literal reciprocity, it surely would have spelled it out, rather than provide explicitly in the very next section that *"[n]othing in this article shall prevent a claimant from commencing an action on his claim at law or in equity"* (SCPA 1810 [emphasis added]). Simply put, we do not read the two sections to mean that a claimant's rights under section 1810 are automatically extinguished if the fiduciary gets to the courthouse first.

Had such effect been intended, the result would necessarily be a race to the courthouse; instead, the statute provides for a limited period of time (60 days) within which a claimant may choose to pursue a claim that has been presented and rejected. Notably, the current Practice Commentaries to section 1809 observe that because a claimant has such a right under section 1810, "[t]he fiduciary should not, therefore, move under this section [1809] until the sixty days have elapsed" (Turano, Practice Commentaries, *op. cit.,* citing *Matter of Unseld,* 43 Misc 2d 106). Similarly, despite the reference by Surrogate's Court to a "trend" toward consolidating all matters in that Court, automatic consolidation would also effectively render section 1810 meaningless. By contrast, following the logic of the commentaries' reasoning with respect to when a fiduciary prudently should move under section 1809, Surrogate's Court might choose to hold such petition in abeyance for the 60-day period in order to permit claimant to commence an action under section 1810 *(see, Estate of Denberg,* NYLJ, Aug. 19, 1970, at 10, col 1 [Sur Ct, NY County]).

In any event, not only do we reject the proposition that the filing of a section 1809 proceeding automatically bars a claimant from timely filing an action under section 1810, but under

the circumstances of this case we also find that the contemporaneous filing of the two proceedings here does not confer priority upon Surrogate's Court. To the contrary, since Katleman's action was clearly brought in a timely fashion immediately upon the failure of the parties' negotiations, and respondents' proceeding was brought the very same day, the plain language of section 1809 ("and no action or proceeding to enforce the claim *has been instituted*" [emphasis added]) is applicable and should be read to require Surrogate's Court to decline jurisdiction.

Accordingly, the order of Surrogate's Court, New York County (Eve Preminger, S.), entered September 5, 1996, which denied claimant's motion to dismiss the executors' petition pursuant to SCPA 1809, should be reversed, on the law and the facts, without costs, the motion granted, and the petition dismissed.

MURPHY, P. J., SULLIVAN and MAZZARELLI, JJ., concur.

Order, Surrogate's Court, New York County, entered September 5, 1996, reversed, on the law and the facts, without costs, the motion to dismiss the executors' petition granted, and the petition dismissed.